Our second case for argument today is Jadair International, Inc. v. American National Property & Casualty Company. Ms. Dewar. Good morning, Your Honor. Judge Easterbrook. May it please the Court, my name is Amanda Duret, and with my co-counsel Kevin Featherston, we represent the appellant Jadair International. In this appeal from a declaratory judgment action against American National Property & Casualty Company, who I'll refer to as ANPAC. On May 15— Ms. Duret, even before you begin, I just want to make sure that I understand your argument. Are you arguing that the condition here was not an exclusion, but a condition subsequent? Yes, Your Honor, we are. And I do need to get into a little bit of the history of the endorsement to get to that argument, but I will get to it quickly. On May 15, 2020, David Schmutzler, the president and owner of Jadair, lost his life after a Cessna aircraft he was piloting experienced a mechanical failure, stalled out, impacted trees, and crashed to the ground near Burlington, Wisconsin. This aircraft was a total loss. Yes, ma'am? Your Honor? No. The aircraft was a total loss. Jadair had obtained hull coverage through ANPAC and filed a claim for just under $230,000 for the Cessna aircraft. ANPAC denied the claim on the grounds that Schmutzler did not have a valid and current medical certificate, even though there is no evidence whatsoever that the medical condition or failure of Schmutzler to have a valid medical contributed to the crash. Now, I'd like to address two main issues with the Court today. The first is the effect of the endorsement to Item 9 of the policy issued by ANPAC, and the second would be the applicability of Wisconsin Statute 631.11 to this case. Now, ANPAC issued this policy period from June 18, 2019 to June 18, 2020. Prior to the issuance of this policy, Schmutzler had filled out an application for insurance on behalf of Jadair. Jadair had knowledge of Schmutzler's over 15,000 hours of flight time, his certified instructor instrument rating, and the fact that he had an FAA second-class medical certificate that contained a waiver due to his pacemaker. And that this second-class medical certificate was issued in August 2018, so it was only valid to August 2019. Now, ANPAC decided to issue this year-long policy to Jadair anyway, and they collected on the premium of $9,440. This was actually the third policy that had been underwritten to him, even though he was close to 80 years old at the time. They added Schmutzler as an approved pilot through an endorsement. ANPAC is the insurer. They are responsible for drafting a policy that is clear and unambiguous. And Wisconsin courts construed an insurance policy as it would be understood by a reasonable person in the position of the insured. Mr. Wray, if I could get back to the first question that Judge Rovner raised in your response. So absent the endorsement, say the endorsement upon which you rely wasn't there, okay? And all we have is item 9 in the coverage identification page. If that were the record, would you still argue that item 9 was a condition subsequent, or at that point, would you concede that item 9 was an exclusion? I would concede that item 9 was an exclusion. And this is actually supported by some of the cases that ANPAC cited to. So what you're saying is that the endorsement is what makes changes the requirements from a exclusion to a condition subsequent? Yes, Your Honor. And if you do look to the cases cited by ANPAC, actually, there's the Western Food Products case, Skymaster of Virginia, Jet Test and Transport, American Eagle Insurance Company. All of those, with the exception of Jet Test, they deal with this boilerplate language that is in the unendorsed item 9. Jet Test does have the endorsement, but it deals with a separate issue of a pilot that was not listed on the endorsement. So going to the endorsement. Perhaps you're going exactly where I was going to, which is, what is the language in the endorsement, to your mind, that changes item 9 from an exclusion to a condition subsequent? I understand that your argument is that the endorsement modifies item 9, but what's the language on which you rely that changes the character of the requirements in item 9 from an exclusion to a condition? In the endorsement, there is a sentence that states, there is no coverage if the pilot does not meet the qualifications or requirements specified below for each designated use of the aircraft, versus the boilerplate language that says, there is no coverage if the pilot does not meet these requirements. These is very clear. It refers to, in the boilerplate language, it refers to the medical certificate, the flight review, and the pilot certificate. But then the endorsement changes it to requirements specified below. And that is very specific, and it says, otherwise David Schmutzler. And this actually tracks with the application. But I would think that what governs whether, and you can correct me if I'm wrong, what governs whether the requirements is one of exclusion or one of condition seems to focus on the language, for example, in item 9, there is no coverage if, right, and then whatever the requirements are. And you have that same language in the endorsement, right? And then there's some requirements. So I'm still trying to understand what is it about the language that changes the nature of the requirements, because the language of condition is the same. Your Honor, I would respectfully disagree that it's the same, because it does discuss how it says, there is no coverage if the pilot does not meet the qualifications or requirements specified below. So I agree that it's language of exclusion, but it refers to the minimum requirements that are in bold at the bottom that include otherwise David Schmutzler. It's not... Look, it seems to me that the new language required that a pilot also meet the training requirements, but the other requirements still remained, namely that there is no coverage if the pilot does not have a medical certificate. I mean, otherwise, what's the point of the language stating that a pilot must have a medical certificate? Those are referring to unlisted pilots, but really what's significant here is that David Schmutzler was a pre-approved pilot, and the RISC had already attached to this contract once ANPAC had looked at his application, looked at his qualifications. They said, you are pre-approved. We are changing this endorsement. This endorsement no longer refers to these requirements from the boilerplate language. It is referring to these newly bolded terms, and at a minimum, this does create an ambiguity, which under Wisconsin law must be construed in favor of the insured. And I do want to touch on sort of this attachment of RISC. There is certainly this difference between Mr. Schmutzler and JADER doing this application, paying for the premium for a year-long policy, and then maintaining a current medical. And there are ways that ANPAC could have made the requirement for maintaining a medical very clear. For example, in their brief, they actually say that the contract required Schmutzler would maintain a current and valid FAA medical certificate for any flights he made throughout the policy period. They could have said that. They did not say that. That is much clearer than what is stated in the endorsement. Tell me this, is it your position that JADER would have to continue to provide coverage even if Schmutzler lost his pilot's license due to malfeasance, like flying intoxicated? With the way that it is written, yes, Your Honor. And I do want to take this point head-on as well as ANPAC's point head-on, that they would not want to underwrite a pilot who is not legal to fly. And again, ANPAC is the drafter of the policy. They are responsible for writing a clear and unambiguous policy as to be understood by the insured. They did not have to list Schmutzler as an approved pilot, but they did. And it's because they had pre-approved his credentials. And JADER's coverage is separate and apart from any possible federal aviation regulation violation. And that's why JADER submits that Wisconsin Statute 631.11 applies. And under 631.11, no failure of a condition prior to loss affects an insurer's obligation under an insurance policy unless it exists at the time of the loss and either increases the risk at the time of loss or contributes to it. So under Wisconsin law, there is this difference between a condition subsequent, which pertains to the contract after the risk has attached. And that's what we're submitting has happened here. There's already been a risk that's been attached. ANPAC is aware that Schmutzler's medical is going to expire during this policy period. And that is different from a condition precedent that precedes the policy when they have this application right in front of them. So any requirement of maintaining it all pertains to after. Now, the district court, in its opinion, erred by stating that there needed not be any causal connection analysis when applied to aviation increased hazard provisions. And this codified causal connection analysis stems from a desire to maintain the freedom of contract while preventing insurers from suffering from this gotcha moment, experiencing a forfeiture of coverage over something that has nothing to do with the cause of the accident. And so jurisdictions with codified causal connections have seen maintaining a current medical certificate as a condition subsequent. A valid medical certificate is proof of medical fitness, and that protects the insurer from the increased hazard of a pilot with health problems flying the plane, which is a risk that ANPAC was well aware of. They cannot create an exclusion after the fact. And I will reserve the rest of my time for rebuttal. Certainly, counsel. Mr. Klingerman. May it please the court, Russell Klingerman appearing for ANPAC. The requirements for Mr. Schmutzmiller for being covered under the policy begins with the application where he says, I understand and acknowledge that there is no coverage in flight unless the aircraft is being operated by the pilots designated on this document and who have at least the certificates, ratings, and pilot experience indicated. Then, the policy is issued and it has on the coverage page requirements for the pilot flying the aircraft. The aircraft must be operated in flight only by a person having the minimum qualifications shown. The pilot must have a current and valid medical certificate, flight review, and pilot certificate with necessary ratings, each as required by the FAA for each flight. Then in caps, there is no coverage if the pilot does not meet these requirements, then as endorsed. The endorsement doesn't replace item 9. It adds to it and it adds to it specific pilots either by name or by training and experience. The endorsement begins with the sentence, the aircraft must be operated in flight only by a pilot named below and Schmutzmiller is named below, having the minimum qualifications shown. The pilot must have a current and valid medical certificate, flight review, and pilot certificate. That's for each flight. So, it's true that he had a medical certificate issued to him by the FAA when the time the policy was issued, but the policy covers each flight separately. So, what Schmutzmiller allowed was for his medical certificate to expire and he didn't renew it and he flew with an expired medical certificate and flying with an expired medical certificate is prohibited by the FAA as a safety regulation. You can even have a medical certificate issued to you, but if you fly without it in your possession, you have violated an FAA safety regulation. The court cited the rule in the opinion. It's 61.3 sub c. Worse than that, he didn't even hold a medical certificate. But he had had he not been attempting to get a medical certificate when he seemed then to abandon the process, right? He was trying to obtain one. In fact, he admitted in correspondence in the fall of that year after it expired that he couldn't fly anymore. Nevertheless, in May of that year, he decided to fly without holding a certificate, certainly without one in his possession. What we are taught as pilots, I've got 3,000 hours, I've been flying over 30 years, you have to do a pre-flight inspection of both the pilot and the aircraft. And if neither of them are capable, ready by paperwork and or if the oil is low or the It's the no-go-no decision. He decided to go, even though he had a head injury, he had some medication in his blood, and he did not hold or possess an FAA medical certificate. By deciding to fly, he increased the risk, and that is what the policy does not cover. Neither does the statute cover it. Not only did the endorsement require that the pilot named below have a medical certificate, that's in the endorsement. The policy in parts 1 and 2 require that you must make certain that the pilot operating the aircraft in flight meets the requirements shown in item 9. And item 9 is there is no coverage if the pilot does not meet these requirements, and item 9 is as endorsed, the aircraft must be operated in flight only by a pilot named below having the medical certificate. And then on top of that, part 2 of the policy has the express exclusion. What we will not pay. We will not pay for physical loss or damage unless the requirements regarding pilots in item 9 are met. And again, item 9 says no coverage if the pilot does not meet these requirements. It was endorsed, and the endorsement says the aircraft must be operated in flight only by a pilot named below. It can't be more clear the way I understand it, and that's what the district court decided in the decision. And then there were some arguments about, so, this, what I've been reading to you is in the briefs, it's in the record, but it's important to remember the Wisconsin approach to insurance policy construction, and this is, these rules apply to contracts whether they're insurance policies or not. First, this is in the design BASA case from the Eastern District 2015. The court shall consider the intentions of the parties. Judge Miller's intentions are revealed when he checked the box in the application and signed the application verifying that I understand and acknowledge that there is no coverage in flight unless the aircraft is being operated by the pilots who have at least the certificates indicated. The medical certificate is one of those indicated. So, his intentions seem to be aligned with ANPAC's intentions, that he knew better. And the law says that the reasonable person in the shoes of the insured is the appropriate party to consider whether they want to not be bound by what they signed. The reasonable person here is a flight instructor with almost 60 years of flying experience who read and signed the application before writing the check for the insurance policy. Also, the documents are supposed to be considered as a whole, giving meaning to every word, and that is what we believe applies here, and that's what the district court agreed with us. An endorsement to a policy adds or modifies, and that's what this endorsement said. It changes your—it changed Item 9, but it changed it by adding two types of pilots. One is Schmutzler, who put in his application he had enough hours to not be governed by the catch-all for any person having a private or more advanced pilot certificate. So, the only thing the endorsement did was add more specific qualifications for who should fly, including logged flying hours, but Schmutzler satisfied those criteria with his application. But having his name appear here does not remove or eliminate from the policy the medical certificate requirement. The medical certificate requirement is on the first page, the coverage identification page. It was in the endorsement. And then the policy in Part 1 and Part 2 say if you don't meet those qualifications, there is no coverage. So, the endorsement doesn't replace the medical certificate requirement. It actually enhances it. It supports it. It says the aircraft must be operated in flight only by a pilot named below having a medical certificate. So, there has been some discussion, there was some discussion earlier about exclusions or conditions preceding. You can't start under this policy and under the FAA regulations, you can't start the engine of the aircraft unless you have a medical certificate in your pocket or in your briefcase. That is a condition preceding. It's not a condition subsequent. And it is written in the policy as an exclusion. In Part 2, it says, well, starting with the application, there is no coverage in flight unless the certificate rules are followed. In the coverage page, it says the pilot must have. I do think you're repeating yourself. Okay. I'm trying to tie together what is said in the policy and policy interpretation and the arguments that we're dealing with about exclusions versus conditions. And I believe we have both an exclusion and a condition preceding. So, therefore, 631.11 does not apply. And even if 631.11 did apply, his conduct did increase the risk. We're not talking about tort-based, tort-style causation here. The Wisconsin legislature could have put tort-style causation into 631.11. It's a low bar. It's is the risk increased. And when you start the engine of an airplane under these circumstances as not consistent with the terms and conditions in the policy that were purchased, the risk is increased. So, 631.11 does not apply. That's what the district court said. And we agree with that 100%. And even if it did apply, the risk was increased. May I reserve? No. Okay. You can desist. You don't have any rebuttal time, counsel.  Are there any questions from the court? Thank you, counsel. We'd love to help you with this and back and forth. Thank you. Thank you. Anything further, Ms. Dura? We touch upon this in our brief, but as to Parts 1 and 2 of the policy, those simply refer back to the endorsement at this point. The endorsement is very clear that it's a change to the policy. At the top, in all caps, it says it's a change. It does not say it's a supplement. More importantly, though. Well, it also says it completes, right? Completes or changes, yes. So why can't we see it as completing Item 9, in other words, supplementing it? Because it does actually have a huge change from Item 9 in language, Your Honor. More importantly, I just wanted to state that there is this difference, and this is why 631.11 matters, between the condition precedent of having the medical to issue the policy versus renewing your medical during the policy period, which by its very definition must occur subsequent to the issuance. And that's very common with just having a medical certificate. And, you know, ANPAC has stated over and over again, the FAA doesn't let you do this. The FAA doesn't let you do this. And what the FAA lets you do is different from what this insurance policy says. So unless there's anything else from the panel, we would ask that you reverse. Thank you very much, counsel. The case is taken under advisement, and the court will take a 10-minute recess before calling the next case.